UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AGUSTIN PEREZ, on behalf of himself and all others similarly situated,** | Civ. No. 21-14883 (KM) (MAH) |
| **Plaintiffs,** | OPINION |
| v. | |
| **I.C. System, Inc.,** | |
| **Defendant.** | |

**KEVIN MCNULTY, U.S.D.J.:**

  This putative class action arises out of debt collection letters sent by defendant I.C. System, Inc. ("I.C. System"). Plaintiff Agustin Perez alleges that I.C. System violated the Fair Debt Collection Practices Act ("FDCPA") by sending out misleading debt collection letters to him and others similarly situated. I.C. System moved to dismiss the complaint on the ground that Perez lacks Article III standing to pursue his FDCPA claim and therefore that this Court lacks subject matter jurisdiction. I agree and grant the motion to dismiss without prejudice. Perez is granted leave to amend his complaint within 30 days.[1]

  **I. Background**

  I recite the facts alleged in the complaint and assume them to be true for purposes of this motion.

---

[1] Certain key items from the record will be abbreviated as follows:

  DE = Docket entry number in this case

  Compl. = Complaint (DE 1)

  Mot. = Brief in support of I.C. System's motion to dismiss (DE 10-1)

  Opp. = Brief in opposition to I.C. System's motion to dismiss (DE 12)

Some time prior to August 24, 2020, Perez incurred a debt to AT&T DIRECTTV ("AT&T") in connection with a consumer account. (Compl. ¶18.) At some point thereafter, AT&T referred the debt to I.C. System for collection. (*Id.* ¶26.)

I.C. System sent Perez a letter dated August 24, 2020 ("the letter") seeking payment of the AT&T debt in the amount of $251.97. (*Id.* ¶29.) The letter contained the following "Validation Notice," which is mandated by 15 U.S.C. § 1692g(a)(3)-(5):

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you make a request in writing within 30 days after receiving this notice we will provide you with the name and address of the original creditor, if different from the current creditor.

(*Id.* ¶¶34-35.) Below the "Validation Notice," the letter stated, "If you feel you are or have been the victim of Theft of Identity, please call AT&T directly." (*Id.* ¶42.) No contact information for AT&T was provided. (*Id.* ¶43.)

In August 2021, Perez commenced this action against I.C. System on behalf of himself and all other New Jersey consumers who were sent similar letters. (*Id.* ¶11.) The complaint raises one count under the FDCPA. It asserts that I.C. System violated 15 U.S.C. § 1692e by using false and misleading representations as a means to collect a debt, and that I.C. System violated § 1692g by failing to effectively convey the "Validation Notice." (*Id.* ¶¶63, 66.)

According to the complaint, being a victim of identity theft is a basis for Perez and others similarly situated to dispute a debt. (*Id.* ¶44.) Thus, Perez and others similarly situated have the right to report the dispute of identity theft directly to I.C. System—either in writing or over the phone—which would then trigger I.C. System's obligation to verify the debt as explained in the "Validation Notice." (*Id.* ¶46.) Perez asserts that the letter "attempts to 'give away' [I.C.

System's] obligation to accept a dispute from Plaintiff and others similarly situated related to identity theft to the creditor – AT&T." (*Id.* ¶47.) In addition, while the letter instructs its recipient to call AT&T to report identity theft in connection the debt, it does not provide the recipient with AT&T's contact information. (*Id.* ¶43.)

In May 2022, I.C. System filed the present motion to dismiss. I.C. System argues solely that Perez does not have standing under Article III to pursue his FDCPA claim because he has not suffered a concrete injury. I.C. System thus asks this Court to dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## II. Discussion

### A. Article III standing

Article III of the U.S. Constitution limits the judicial power of federal courts to deciding "cases" or "controversies." "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021). The doctrine of standing developed to ensure that federal courts do not exceed their judicial authority and usurp the powers of the political branches. *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing that he or she has standing to sue under Article III. *Spokeo*, 578 U.S. at 338. Where, as here, the defendant raises a facial challenge to standing in a motion to dismiss under Rule 12(b)(1), a court applies the same standard it does when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6). *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1 (3d Cir. 2006)). That is, the court accepts the plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nevertheless, threadbare recitals of the elements of standing, supported by mere conclusory statements, do not

suffice." *In re Horizon, supra* (quotation omitted) (cleaned up). A complaint survives a motion to dismiss for lack of standing only if it contains sufficient factual matter that, if accepted as true, would establish standing. *Id.*

Standing consists of three well-recognized elements. *Spokeo*, 578 U.S. at 338 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, supra* (citing *Lujan, supra*). In the class action context, the requirements for standing do not change. *In re Horizon*, 846 F.3d at 634. Named plaintiffs who seek to represent a class, like any plaintiff, must allege and show that they personally have suffered an injury in fact that is traceable to the defendant and redressable in court.

In this case, I.C. System challenges only the first element of standing; it argues that the allegations in the complaint are insufficient to demonstrate that Perez has suffered an injury in fact. An injury in fact is one that is both "concrete" and "particularized." *Lujan*, 504 U.S. at 560. I.C. System does not dispute that the harm Perez claims to have suffered was "particularized" because, as the recipient of the letter, Perez was personally affected by it. *See Spokeo*, 578 U.S. at 339. Rather, I.C. System argues that Perez did not suffer a "concrete" injury because he was not actually harmed by the purported FDCPA violation. (Mot. 5-7.)

For an injury to be concrete, it must actually exist. *Spokeo*, 578 U.S. at 340. In other words, the injury must be "real" and not "abstract." *Id.* Crucially, however, a concrete injury does not need to be tangible. *Id.* The Supreme Court has recognized that many intangible injuries can nevertheless be concrete, even if harder to discern than straightforward physical or monetary harm. *Id.*

In assessing whether an intangible harm constitutes an injury in fact, "both history and the judgment of Congress play important roles." *Spokeo*, 578 U.S. at 340. If an alleged intangible harm is "closely related 'to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or

4

American courts,'" it is likely to be sufficient to satisfy the injury-in-fact requirement. *In re Horizon*, 846 F.3d at 637 (quoting *Spokeo, supra* at 341). "In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Id.*

The Court has recently cautioned, however, that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independent decide whether a plaintiff has suffered a concrete harm under Article III." *TransUnion*, 141 S.Ct at 2205. "For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* Where a plaintiff merely alleges a "bare procedural violation, divorced from any concrete harm," the injury-in-fact requirement of Article III is not satisfied. *Spokeo*, 578 U.S. at 341.

The Court's decision in *TransUnion* sheds light on the concreteness requirement. There, the named plaintiff and 8,185 class members alleged that TransUnion, a credit reporting agency, violated the Fair Credit Reporting Act (FCRA) by, among other things, failing to use reasonable procedures to ensure the accuracy of their credit files. *TransUnion*, 141 S. Ct. at 2203. All class members had names that matched the name of an individual on the federal government's list of terrorists, drug traffickers, and other serious criminals. *Id.* at 2208-2209. The internal credit file maintained by TransUnion for each of these individuals thus contained a misleading alert indicating that each was a "potential terrorist." *Id.*

Importantly, however, only 1,853 class members had their credit reports disseminated to third-party businesses during the relevant period. *Id.* at 2208. The Court held that those class members had standing to sue on the reasonable procedures claim because they suffered a "reputational harm associated with the tort of defamation." *Id.* By contrast, the 6,332 class

5

members whose credit reports were not provided to any third parties during the relevant period lacked standing with respect to that claim. *Id.* at 2209. The Court reasoned that there is no historical or common law analogue where the injury is solely the existence of a misleading alert in a consumer's internal credit file. *Id.* Defamation is not a match because publication is essential to liability in a defamation suit. *Id.* The Court therefore concluded that "[t]he mere presence of an inaccuracy in an internal credit file, if not disclosed to a third party, causes no concrete harm." *Id.* at 2210.

The *TransUnion* decision also clarified that in a suit for damages, the "risk of future harm" does not constitute concrete harm in and of itself. *Id.* at 2210-2211. The Court rejected the argument that the 6,332 class members suffered a concrete injury because the misleading alerts in their credit files exposed them to a material risk that the information could be disseminated to third parties in the future. *Id.* According to the Court, unless those class members demonstrated that they "were independently harmed by their exposure to the risk itself—that is, that they suffered some other injury (such as an emotional injury)," the risk of future harm alone was not a basis for standing. *Id.*

Even before *TransUnion* was decided, the Third Circuit instructed that a "thorough discussion of concreteness is necessary in order for a court to determine whether there has been an injury-in-fact." *Bock v. Pressler & Pressler, LLP*, 658 F. App'x 63, 65 (3d Cir. 2016) (citation omitted). Recognizing that *TransUnion* has now further emphasized the importance of the concreteness requirement, I undertake such a discussion here.

### B. The FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices which contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000), as amended (Sept. 7, 2000) (quoting *Miller v. Payco–General American Credits, Inc.*, 943 F.2d 482,

483–84 (4th Cir.1991)). Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692g, on the other hand, contains "debt validation provisions" that "were included by Congress to guarantee that consumers would receive adequate notice of their rights under the law." *Wilson, supra* (quoting *Miller, supra* at 484). One such right is the right to dispute the validity of the debt and subsequently obtain verification of it. 15 U.S.C. § 1692g(a).

Before *TransUnion* was decided, courts in this district routinely found that a plaintiff suffered a concrete injury and therefore had standing where a violation of the FDCPA was alleged. *See Napolitano v. Ragan & Ragan*, No. 15-2732 (FLW), 2017 WL 3535025, at *6 (Aug. 17, 2017) (collecting cases). Post-*TransUnion*, however, "[a] growing chorus of courts in this district and elsewhere have found FDCPA complaints lacking as far as pleading concrete harms, often times with plaintiffs merely alleging that the defendant violated the statute and therefore infringed on their rights." *Daye v. GC Servs. Ltd. P'ship*, No. CV217981(MAS)(TJB), 2022 WL 4449381, at *2 (D.N.J. Sept. 23, 2022). *See, e.g., Rodriguez-Ocasio v. I.C. Sys., Inc.*, No. CV 19-13447, 2022 WL 16838591, at *3-4 (D.N.J. Nov. 8, 2022) (finding that the plaintiff lacked standing to pursue FDCPA claim where the complaint "only asserts that the letter harmed the hypothetical 'least sophisticated consumer' by leaving such consumer" confused about the debt); *Duncan v. Sacor Fin., Inc.,* No. 222CV02742SDWCLW, 2022 WL 16722236, at *3 (D.N.J. Oct. 19, 2022), report and recommendation adopted, No. 22-02742 (SDW)(CLW), 2022 WL 16716085 (D.N.J. Nov. 4, 2022) (finding that plaintiff who did not allege that FDCPA violations "actually harmed him" lacked standing); *Rabinowitz v. Alltran Fin. LP*, No. CV 21-12756, 2022 WL 16362460, at *9 (D.N.J. Oct. 25, 2022) (finding that plaintiff who "failed to show that he was actually harmed in any way" by receiving debt collection letter lacked standing); *Foley v. Medicredit, Inc.*, No. CV2119764MASDEA, 2022 WL 3020129, at *4 (D.N.J. July 29, 2022)

(finding that plaintiff who did "not allege that she was actually harmed in any manner from receiving" debt collection letter lacked standing).

The consensus in post-*TransUnion* FDCPA cases is that misleading information in a debt collection letter causes concrete harm sufficient to confer Article III standing only where, at a minimum, that information influences a plaintiff's decision-making with respect to the debt. *See, e.g., Kola v. Forster & Garbus LLP,* No. 19-CV-10496 (CS), 2021 WL 4135153, at *7 (S.D.N.Y. Sept. 10, 2021) (dismissing FDCPA claim based on misleading debt collection letter where plaintiff "failed to establish that she relied on the letter in making any decision about paying the debt"). The reasoning behind this consensus is that there is no historical or common law analogue for a cause of action based on mere receipt of false or misleading information from a debt collector. To be sure, the communication of false information with the intent to induce someone to part with money bears a resemblance to common law fraud. *See Lahu v. I.C. Sys., Inc.*, No. CV 20-6732, 2022 WL 6743177, at *3 (D.N.J. Oct. 11, 2022). But a critical element of a fraud claim, as many courts reviewing FDCPA claims have emphasized, is "some form of detrimental reliance on the representations made by the defendant." *Id. See, e.g., Rabinowitz,* 2022 WL 16362460, at *9. A plaintiff who fails to allege any reliance on a false or misleading statement made in violation of the FDCPA stands on the same footing as a plaintiff who fails to allege third-party dissemination of an internal credit file maintained in violation of the FCRA.

In short, to satisfy the concreteness requirement, a plaintiff must allege some "downstream consequences" or "adverse effects" from receiving false or misleading information in violation of the FDCPA. *Daye,* 2022 WL 4449381, at *3. *See TransUnion,* 141 S.Ct. at 2214 (quoting *Trichell v. Midland Credit Management, Inc.*, 946 F.3d 990, 1004 (11th Cir. 2020) ("An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'") Merely alleging a statutory violation is insufficient. *See In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litig.*, No. 2615, 2017 WL 354023, at *3

(D.N.J. Jan. 24, 2017) (plaintiffs lacked standing to pursue FCRA claims where they did "not factually allege any harm aside from the statutory violation itself").

### C. Application

Here, Perez alleges that I.C. System violated the FDCPA by communicating that he should contact AT&T with an identity theft issue. (Opp. 11). That communication, says Perez, "overshadowed" and "was inconsistent with" I.C. System's obligation to disclose to Perez that he has a right to dispute the debt within 30 days of receiving the letter. (Compl. ¶¶67-68). But crucially, Perez does not allege that any negative consequences stemmed from I.C. System's violation. For instance, he does not state that, in reliance on the letter, he contacted AT&T to report that he had been the victim of identity theft, not realizing that he could report the issue to I.C. System instead and obtain verification of the debt pursuant to § 1692g. In fact, he does not allege that he took *any* action as a result of receiving the letter. He states that the letter "frustrated" his "ability to intelligently choose his . . . response," but he fails to allege how he did respond, if at all. (Compl. ¶53.)

The allegation that the letter "creates confusion and leaves [Perez] and others similarly situated uncertain as to their dispute rights under the FDCPA" is also insufficient. (*Id.* ¶51.) Although the Third Circuit has yet to consider the issue, both the Sixth and Seventh Circuits have "have squarely rejected general allegations of confusion, alone, as insufficient to confer standing." *Madlinger v. Enhanced Recovery Co., LLC*, No. CV 21-00154 (FLW), 2022 WL 2442430, at *5 (D.N.J. July 5, 2022) (citing *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 363 (6th Cir. 2021); *Pierre v. Midland Credit Mgmt., Inc.,* 29 F.4th 934, 939 (7th Cir. 2022); *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021)). Perez must allege that he took some action, or alternatively that he failed to act, as a result of that confusion.

In *Huber*, for example, the plaintiff alleged that the debt collection letter she received violated the FDCPA because it did not clearly communicate the

9

amount that she owed. 2022 WL 1801492, at *2. As a result, she was unable to pay the debt because she did not know how much to pay. *Id.* at *4. Judge Brody of the Eastern District of Pennsylvania held that the plaintiff had standing to pursue her FDCPA claim because she had suffered a concrete injury. "She was not merely confused or anxious; she was also unable to undertake reasonable action with the benefit of accurate information because of [the debt collector's] misleading collection letter." *Id.*

Similarly, in *Chisom v. Afni, Inc.*, the plaintiff alleged that, had she not been confused by the debt collection letter she received, "she would have opted to dispute or verify" the debt. No. 20-cv-06565, 2021 WL 4355367, at *2 (Sept. 24, 2021). Because of her confusion, however, she did not do so. *Id.* Judge Blakey of the Northern District of Illinois concluded that the plaintiff had standing to pursue her FDCPA claim because she had pled that her confusion led to inaction; it caused her to "forego her statutory right to dispute the alleged debt." *Id.* at *5.

Unlike the plaintiffs in *Huber* and *Chisom*, Perez does not allege that he failed to take advantage of his dispute rights because of the confusion that the letter engendered. He therefore has failed to allege that he suffered a concrete injury.

Perez insists that the harm he experienced was not simply "confusion" or "uncertainty," but that he was misled about the method of disputing a debt under the FDCPA. (Opp. 12-13.) But again, he has not alleged that he took any action or failed to act as a result of being misled, which without more reflects only a state of mind. Moreover, he did not suffer a concrete harm merely by being put in "harm's way," as he argues. (*Id.*) *TransUnion* made it clear that unless and until a risk of harm "materializes" or there is independent harm caused by the risk itself, there is no standing to pursue a claim for damages. 141 S.Ct. at 2211. Perez did not allege that the risk of not being able to dispute

10

his debt caused him independent harm, such as an emotional injury. [2]

The right to dispute the validity of a debt is undeniably an important one, but Perez has not alleged that he was denied that right as a consequence of I.C. System's misleading letter. *Cf. Chisom,* 2021 WL 4355367, at \*4. He may amend the complaint to add such allegations if he chooses.[3] I will therefore dismiss the complaint without prejudice for lack of standing.

### III. Conclusion

The motion to dismiss (DE 10) is **GRANTED** and the complaint is dismissed without prejudice to the submission, within 30 days, of a proposed amended complaint. An appropriate order will issue.

Dated: December 29, 2022

/s/ Kevin McNulty

_____

**KEVIN MCNULTY**
**United States District Judge**

---

[2] To the extent *Ozturk v. Amsher Collection Services, Inc.*, No. 21-18317, 2022 WL 1602192 (May 20, 2022), is inconsistent with the then fairly recent case of *TransUnion,* I decline to follow it. The weight of post-*TransUnion* authority in this district, including Judge Cecchi's more recent decisions, is to the contrary. *See Lahu,* 2022 WL 6743177, at \*4; *Vaughan v. Fein, Such, Kahn & Shepard, P.C.*, No. CV 21-16013, 2022 WL 2289560, at \*1 (D.N.J. June 24, 2022).

[3] Of course, a conclusory statement that Perez was denied the right to dispute the debt would be insufficient. *See Finkelman v. Nat'l Football League,* 810 F.3d 187, 194 (3d Cir. 2016) (citation omitted) ("[S]tanding cannot rest on mere 'legal conclusions' or 'naked assertions.'") Perez must state factually what action he took or failed to take as a result of receiving the letter. *See Lahu,* 2022 WL 6743177, at \*4.